Lanara D. OLIVER, Petitioner

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 23, 2010.

Decided Sept. 1, 2010.

Matthew J. Ziegler, Williamsport, for petitioner.

Jonathan D. Koltash, Asst. Counsel, Harrisburg, for respondent.

Richard F. Schluter, Williamsport, for intervenor, Bostley's Preschool Learning Center, Inc.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McGINLEY.

Lanara D. Oliver (Claimant) petitions for review from the order of the Unemployment Compensation Board of Review (Board) which reversed the referee's grant of benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]

Claimant worked as a preschool teacher for Bostley's Preschool (Employer) from February 26, 2007, through February 26, 2009. On February 26, 2009, Claimant took her group of six children from the playroom to an outdoor play area. Employer had a policy that a teacher must supervise all of the children in her charge at all times. Claimant's supervisor noticed that one child was still in the playroom. She retrieved the child and delivered him to Claimant. Claimant's failure to supervise this child resulted in her termination.

Claimant applied for unemployment compensation benefits. Her claim was denied by the Unemployment Compensation Service Center. Claimant appealed to the referee.

On May 13, 2009, the referee held a hearing. Vanessa Holmes (Holmes), exec-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

utive director of Employer, testified regarding Claimant's termination:

> DPW [Department of Public Welfare] regulations and Bostleys [sic] Pre–School has a 100 percent supervision policy.... DPW regulations ... 'Children on the premises must be supervised at all times by the staff. The staff person shall be assigned and responsible for supervision of children.' ... 'The staff person should know the names and whereabouts of the children in his or her group on the facility excursions ...

Notes of Testimony, May 13, 2009, (N.T.) at 5.

Holmes also testified regarding Employer's one hundred percent supervision policy:

> [T]his is page three of our staff manual and in here it states that 'No child shall ever be left unattended or unsupervised at any time for any reason. Our standard for supervision that is 100 percent of the children shall be supervised 100 percent of the time with no exception for any reason.'
>
> ....
>
> And this policy was signed and dated by Ms. LaNara [Claimant] when she started with employment with Bostley's. It also states in that policy that upon finding that someone did leave a child unattended that they would be terminated, and that's on the page that Ms. LaNara [Claimant] ... signed.

N.T. at 6.

Melissa Schon (Schon), director of Employer and Claimant's supervisor, testified regarding the events surrounding her discovery that Claimant could not account for one of the children assigned to her:

> I was outside on our playground, our smaller playground, and the other teacher and I both noticed that there was a child in the playroom. And I went to see why that child was in there. The lights were off and the child was by themself [sic]. And I went to proceed to ask Ms. LaNara [Claimant] how many children she had, because I knew that the child belonged to her. And she stated that she had six, and I said, 'No ... You have five, because here is your sixth one.' So that is what happened with that.

N.T. at 9.

Schon also testified that Claimant was given a warning on February 13, 2009, for violating the one hundred percent supervision policy. N.T. at 11.

Claimant acknowledged that she was aware of Employer's policy that no child was to be left unattended or unsupervised for any moment of time. N.T. at 12. She further acknowledged that she received a verbal warning for violation of this policy on February 13, 2009. N.T. at 12. Claimant explained the events of February 26, 2009, at the hearing before the referee:

> [W]hen we were going outside the playroom ... my shoe strings were all loose. I stumbled over my feet.... And I sort of ... fell into the slide so I wouldn't fall on the floor or on the ground, and ... the door was still open because I fell. So when I turned around the [sic] close the door ... I didn't ... actually, see him in there. Honestly, I did not, because if I did, I would have grabbed him out of there. I closed the door. I did not know he was in there. I picked up my roll book off the floor because I had dropped the roll book on the floor as well, and I started playing with the children. That's when I noticed I didn't see Peter, so that's when I started looking around for him, and that's when Melissa came out and asked me how many children did I have. And proceeded to tell her I had six, and she said, 'No, you have five.' I said, 'Five?' And that's

when she pulled him from around her. And then I said, 'Oh, my god, I didn't know he was in there,' and I was telling her I was sorry, and she gave me this look, and she says, 'Well, I'm going to have to document this.' And she closed the door and went in.

N.T. at 13.

Claimant estimated that the child was missing for no more than four minutes. N.T. at 13. She believed that she had "all six of them [the children] when I went out." N.T. at 14. However, she "didn't realize that he had went [sic] back in because I went to close the door, I didn't see him." N.T. at 14. Claimant admitted that she violated Employer's rule but that it was an "honest mistake" N.T. at 14.

In her closing statement, Holmes summarized her position:

I would just say that this is not the first time that we have let somebody go for this reason. We have a policy; we enforce it. If children are not supervised, any staff member at any time should be able to walk up to them and ask them how many children they have in their care, should be able to tell us how many, and know those children by name. Do I feel this was intentional? No. But accidents happen because things are not intentional, and that's why we have this policy. We have to enforce it.

N.T. at 15.

The referee reversed the determination by the Unemployment Compensation Service Center and granted benefits. The referee made the following findings of fact:

1. The claimant was last employed at Bostleys Pre–School as a full time pre-school teacher at the rate of $7.65 per hour from February 26, 2007 through her last day worked of February 26, 2009.

2. The claimant was discharged for leaving a two year old child in a play room by himself while outside on the playground with the other children.

3. The employer has a policy which states in part that no child shall ever be left unattended or unsupervised at any time for any reason.

4. Our [Employer's] standard for supervision is that 100% of the children shall be supervised 100% of the time with no exceptions for any reason.

5. The employer's policy also provides that the following action will be taken for any lapse in supervision regardless of the duration: (1) the employee will be placed on an immediate two week unpaid suspension while the case is being reviewed; (2) subject to the findings of the review, the following may occur: (a) the employee's employment may be terminated, or (b) the employee may be reinstated in a probationary status for a period to be determined.

6. The claimant received a verbal warning from her direct supervisor on February 13, 2009 in regards to the 100% supervision policy.

7. On February 26, 2009, when taking the six two-year old children she was watching from the playroom to the playground outside, the claimant counted that she had six children on her way out to the playground.

8. The claimant stumbled over her shoe string and fell into a slide.

9. Regaining her balance, the claimant turned around to close the door and was not aware that one of the six children went back inside the playroom.

10. The claimant began playing with the children she was supervising on the playground and a few minutes later noticed that one of the six children was missing, so began to look for him on the playground equipment.

11. The claimant's supervisor then came over to the claimant and asked her how many children she had to which the claimant responded she had six.

12. The claimant's supervisor responded, 'no you have five, here is number six.'

13. Claimant's supervisor contacted the executive director and then the executive director contacted the owner of Bostley's Pre–School and the decision was made to terminate the claimant's employment that same day.

14. On February 26, 2009, the claimant violated the employer's 100% supervision policy.

Referee's Decision, May 15, 2009, (Decision), Findings of Fact Nos. 1–15 at 1–2.

The referee determined that Claimant's conduct did not rise to the level of willful misconduct because she did not deliberately violate Employer's rule and made an "honest mistake."

Employer appealed to the Board. The Board reversed and determined Claimant committed willful misconduct. The Board made its decision based on the same record that was before the referee. The facts, as found by the Board, are as follows:

1. The claimant was last employed as a Preschool Teacher by Bostley's Pre-school from February 26, 2007 to February 26, 2009. Her final rate of pay was $7.65 per hour.

2. The employer's policy mandates that no child be left unsupervised or unattended for any amount of time. A violation of this rule may result in immediate termination.

3. The claimant knew of the employer's rule.

4. On or about February 13, 2009, the claimant received a verbal warning when she left a room of children unattended in order to help another child in the bathroom.

5. On or about February 26, 2009, the claimant was supervising a group of two-year-olds.

6. The claimant took the group from an indoor playroom to the outdoor playground.

7. The claimant's supervisor observed one of the children that the claimant was supervising playing alone in the indoor playroom. The supervisor recognized that the child was assigned to the claimant's group.

8. The supervisor returned the child to the claimant and reported the incident to the executive director of the school.

9. On February 26, 2009, the claimant was discharged for violating the employer's rule requiring each child to be supervised at all times.

Board Opinion, August 24, 2009, (Opinion), Findings of Fact Nos. 1–9 at 1–2.

The Board determined:

In this case, the employer has provided sufficient credible evidence to show that it has a rule that directs that no child may be left unsupervised or unattended for any reason. A violation of this rule may result in immediate termination. The employer has shown that the claimant violated the rule when one of the children assigned to her group was left in an unsupervised playroom. Thus, the employer has met their [sic] burden. Once the employer has met their [sic] burden, the burden shifts to the claimant to show good cause for her violation of the employer's rule. The claimant testified that the child was left unattended by accident. The Board does not find the claimant's assertion credible in light of the fact that the employer had given the claimant a warning two weeks earlier, where she was told that she

could not leave the children alone for any reason. The claimant intentionally failed to observe the whereabouts is evident of the children in her care [sic]. Because she has failed to provide sufficient credible testimony or evidence to show good cause for violation of the employer's rule, she must be denied benefits.

Opinion at 2–3.

Claimant contends that the Board erred when it concluded that her "accidental actions" constituted willful misconduct.[2]

 Whether a claimant's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. *Lee Hospital v. Unemployment Compensation Board of Review*, 139 Pa. Cmwlth. 28, 589 A.2d 297 (1991). Willful misconduct is defined as conduct that represents a wanton and willful disregard of an employer's interest, deliberate violation of rules, disregard of standards of behavior which an employer can rightfully expect from the employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or employee's duties and obligations. *Frick v. Unemployment Compensation Board of Review*, 31 Pa.Cmwlth. 198, 375 A.2d 879 (1977). The employer bears the burden of proving that it discharged an employee for willful misconduct. *City of Beaver Falls v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 14, 441 A.2d 510 (1982). The employer bears the burden of proving the existence of the work rule and its violation. Once the employer establishes that, the burden then shifts to the claimant to prove that the violation was for good cause. *Peak v. Unemployment Com-*

*pensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

While Claimant concedes that she violated Employer's rule, she asserts that her conduct was not willful, intentional, or deliberate and does not constitute willful misconduct. *See Frazier v. Unemployment Compensation Board of Review*, 49 Pa. Cmwlth. 474, 411 A.2d 580 (1980).

Claimant's testimony at the hearing did not correspond to her earlier description of the events of February 26, 2009. In her appeal of the Unemployment Compensation Service Center's denial of benefits, Claimant stated:

Please note, I do take responsibility for the separation of the child. The children and I were going outside for recess and I did not realize this child had run back inside until my Director brought it to my attention. I am truly apologetic and should have counted once we were outside as I did while we were inside.

Appeal from Determination of Unemployment Compensation Service Center, April 17, 2009, (Appeal) at 1.

Critically, Claimant's version of the events was not credited by the Board. In unemployment compensation proceedings, the Board is the ultimate factfinding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded evidence. *Unemployment Compensation Board of Review v. Wright*, 21 Pa. Cmwlth. 637, 347 A.2d 328 (1975). Findings of fact are conclusive upon review where the record, taken as a whole, provides substantial evidence to support the findings. *Taylor v. Unemployment Com-*

---

**2.** This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994).

*pensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).

The Board was free to reject Claimant's testimony that she lost sight of the child when she tripped over her shoelaces. Even if she had tripped and lost sight of the child, Schon testified that Claimant was not aware a child was missing when Schon presented her with the child. Claimant's version of what happened is internally inconsistent and also conflicts with Schon's testimony insofar as Claimant told Schon all her children were accounted for, when in fact, Schon discovered one of Claimant's charges by himself in the unlighted playroom. Also, Claimant, herself, stated in her appeal of the Unemployment Compensation Service Center decision that she "should have counted once we were outside." Appeal at 1. Here, Claimant is essentially asking this Court to usurp the factfinding function of the Board and accept her version of the events of February 26, 2009. This Court may not do so.

This Court notes that the Board reached different findings and conclusions than the referee. Specifically, the referee found that Claimant stumbled over her shoe string and fell into a slide. After she regained her balance, Claimant turned to close the door to the playroom and was unaware that one of the children went back inside the playroom. A few minutes later Claimant realized the child was missing and began to look for him. Schon then came to her with the missing child. Decision, Finding of Fact Nos. 7–12 at 2. Based on these findings, the referee concluded that, even though Claimant violated Employer's rule, she did not commit willful misconduct because she made an honest mistake.

The Board, on the other hand, found that Claimant took her group of children from an indoor playroom to an outdoor playground. Schon saw that one child un-der Claimant's care was alone in the indoor playroom, returned the child to Claimant, and notified her supervisor of the incident. Opinion, Finding of Fact Nos. 6–8 at 2. The Board did not find credible Claimant's excuse that she left the child in the playroom by accident. The Board concluded that Claimant intentionally failed to observe the whereabouts of the children in her care and failed to show good cause for the violation of Employer's rule of 100% supervision.

◼ In *Treon v. Unemployment Compensation Board of Review,* 499 Pa. 455, 453 A.2d 960 (1982) our Pennsylvania Supreme Court stated that if particular findings are inconsistent, incredible, or unsupported by the evidence, then the Board must so indicate. The Board may not ignore the referee's findings if they are supported by overwhelming evidence. The Board must provide a reason when it disregards the findings of the referee which are based upon consistent and uncontradicted testimony. *Treon.*

In *Peak,* conflicting testimony concerning the employer's lunch policy was submitted. The referee credited Walter Peak's (Peak) version of the policy, while the Board chose to believe in Samuels and Son's (Peak's employer) version. In its decision, the Board provided no explanation for the reversal of the referee's credibility determination. On appeal, the claimant argued that pursuant to *Treon,* the Board was required to provide an explanation for rejecting the referee's credibility determination. Our Supreme Court rejected this argument:

> *Treon* involved the board's rejection of a referee's finding based on uncontradicted evidence. Here the evidence was conflicting. Appellant's more general argument disguises an attack on Section 504 of the Act [Law] ... which we have consistently held makes the Board the

ultimate finder of fact with power to substitute its judgment for that of its referees on disputed facts.

*Peak,* 509 Pa. at 269–70, 501 A.2d at 1385.

■ First, the Claimant did not raise this issue concerning the Board's alleged failure to support its decision for overriding the referee's credibility determinations in the Statement of Questions Involved or in the Argument section of her brief.

Pa.R.A.P. 2116(a) provides in pertinent part:

The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement shall be no more than two pages and will be deemed to include every subsidiary question fairly comprised therein. *No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.*

(Emphasis added).

Claimant's Statement of Questions Involved contained one issue: "Whether the Unemployment Compensation Board of Review committed an error of law by applying the incorrect legal analysis in concluding that employee's [Claimant] accidental actions amounted to willful misconduct." Claimant's Brief at 4.

From that statement, it does not appear that Claimant preserved the issue of whether the Board failed to provide sufficient support for arriving at a different credibility determination than the referee in the Statement of Questions Involved.

Assuming arguendo, that Claimant did raise this issue in the Statement of Questions Involved, Claimant must also raise the issue in the Argument Section of the brief. *Harvilla v. Delcamp,* 521 Pa. 21, 555 A.2d 763 (1989) (issue included in Statement of Issues but not addressed in argument section of appellant's brief was waived). In the argument section of the brief, which consists of slightly more than two pages, Claimant asserts:

[B]ecause there was no evidence presented that Lanara D. Oliver [Claimant] did anything other than unintentionally err in her job performance, and there was no evidence presented of a wanton or willful disregard, this Court must find the Employer did not meets [sic] its burden in proving that Lanara D. Oliver committed willful misconduct. . . .

Claimant's Brief at 10.

■ At no time in the brief did Claimant argue that the Board erred when it overrode the credibility determination of the referee without adequate explanation. This Court does not raise non-jurisdictional issues *sua sponte.* Claimant failed to preserve this issue.

Assuming that Claimant did preserve this issue, it is not clear that the testimony of Claimant was uncontradicted. First, in Claimant's original appeal of the denial of benefits by the Unemployment Compensation Service Center, she stated "I did not realize this child had run back inside until my Director [Schon] brought it to my attention." Appeal of Denial of Claim, April 17, 2009, at 1. In her testimony before the referee, Claimant testified that she tripped over her shoe strings and then recovered and picked up her roll book. As she began to play with the children, she realized that the child was missing. Claimant's statements are inconsistent and contradict one another. Second, Schon testified that Claimant told her that she had six children when in fact she had five. Schon's testimony directly contradicts Claimant's testimony that she was looking for the missing child as soon as she started playing with the children after her alleged fall. Be-

cause Claimant's testimony was inconsistent and contradicted by Schon regarding Claimant's knowledge of the missing child, the Board did not have to provide a reason for reversing the referee. *Treon.*

■ Even if Claimant's testimony regarding the events of February 26, 2009, was uncontradicted, this Court need not reverse the determination of the Board that Claimant committed willful misconduct. First, the Board explained its reason for rejecting Claimant's credibility: "The Board does not find the claimant's assertion credible in light of the fact that the employer had given the claimant a warning two weeks earlier, where she was told that she could not leave the children alone for any reason." Opinion at 2. The Board apparently believed that because Claimant had already received a warning for the same infraction two weeks earlier that she would be less than truthful regarding how she came to lose track of the child. In any event the Board provided an explanation for its determination in accordance with *Treon.* It may not have been as well stated as this Court desires, but it is sufficient.

Second, even if the Board had failed to explain its reasoning for rejecting Claimant's testimony, the error was harmless. In *Heitczman v. Unemployment Compensation Board of Review,* 162 Pa.Cmwlth. 275, 638 A.2d 461 (1994), Michael G. Heitczman (Heitczman) worked as a truck driver for Central Air Freight Service (Central). Central had a policy of which Heitczman was aware that required truck drivers to back up their trucks as infrequently as possible, and, if they had to back up, to get out of the truck and make a "walk around" to ensure that the path to back up was clear to avoid accidents. On November 25, 1992, Heitczman decided to back up his truck to move it in the hope of getting a better radio signal. Heitczman did not walk completely around his truck to see if anything blocked his path. He then backed up and hit a light standard. The light standard fell on the roof of the truck which resulted in an undetermined amount of damage to the truck and approximately $6,300 in damage to the light standard. Central terminated Heitczman for his violation of Central's policy. Heitczman sought unemployment compensation benefits. The Unemployment Compensation Service Center denied his claim. The referee reversed on the basis that Heitczman did not directly violate the policy because the light standard was located in his blind spot and he could not see it when backing up. The Board reversed the referee on the basis that Heitczman did not provide adequate justification for his violation of Central's rule. *Heitczman,* 638 A.2d at 462–463.

Heitczman petitioned for review with this Court and argued that he did not commit willful misconduct because he did not make a deliberate decision to back up the truck improperly and his conduct was merely negligent. *Heitczman,* 638 A.2d at 463.

This Court affirmed:

In Marysville [*Body Works, Inc. v. Unemployment Compensation Board of Review* [54 Pa.Cmwlth. 6] 419 A.2d 238 (1980) ], an employee violated a shop rule by punching the time card of another employee. Finding that employee's action was solely based on mistake, we affirmed the Board's grant of unemployment compensation benefits. However, in this case, there is no question of mistake. Claimant [Heitczman] knew of the existence of the work rule, specifically failed to follow it by backing up his truck without making a 'walk around' and, as a result hit the light standard that crashed onto the roof of his Employer's [Central] truck. Such conduct

is not the type of inadvertence, i.e. negligence, that ... Marysville addressed, but is more akin to the disobedience of a direct instruction.

*Heitczman,* 638 A.2d at 464.

■ Here, Claimant was admittedly aware of Employer's 100% supervision policy. According to her testimony at the hearing, she stumbled over her shoe string, recovered, and closed the door to the playroom. She then picked up her roll book and began playing with the children. After she started playing with the children, she stated she first realized one was missing then began to look for him. She testified that he was missing for four minutes. To comply with the policy, Claimant should have taken roll when she first went outside but did not. As in *Heitczman,* Claimant's conduct was not a mere mistake.

This Court realizes that the Board did not do the most artful job of crafting the Opinion. Further, this Court realizes that Claimant is deservedly sympathetic. However, even if Claimant did stumble and lose track of the child, she did not have good cause for violating Employer's rule of 100% supervision. She admitted to not counting the number of children after she regained her balance. Even if her actions constituted an honest mistake, it would not justify the violation of Employer's rule. It was akin to Heitczman's failure to perform a "walk around" before backing up his truck.

Accordingly, this Court affirms.[3]

Judge McCULLOUGH dissents.

## ORDER

AND NOW, this 1st day of September, 2010, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

DISSENTING OPINION BY Judge BROBSON.

Respectfully, I dissent. In this appeal, Lanara D. Oliver (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board), which reversed the referee's grant of benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] Because I believe the Board failed to support its decision for overriding the credibility determination of the referee, I would vacate the Board's order and remand the matter to the Board for further consideration.[2]

---

3. Although Holmes stated in her closing statement that she did not feel Claimant's action was intentional, Holmes did not testify to that effect.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for unemployment compensation benefits where the unemployment is due to discharge for "willful misconduct."

2. The Majority concludes that Claimant did not adequately raise the issue of whether the Board failed to support its decision for overriding the credibility determination of the referee. In her Statement of Questions Involved, Claimant asks "[w]hether the [Board]

committed an error of law by applying the incorrect legal analysis in concluding that employee's accidental actions amounted to willful misconduct." (Claimant's Br. at 4) In the first paragraph of her Summary of Argument, Claimant writes:

[Claimant] argues that the [Board] erred *where there was undisputed testimony that [Claimant's] actions amount to an honest mistake,* yet it found she had committed willful misconduct and thus determined her ineligible for Unemployment Compensation benefits.

(Claimant's Br. at 7 (emphasis added).) Finally, Claimant raises at other portions of her brief her challenge to the Board's decision despite the uncontradicted evidence supporting her story of the events on February 26,

Intervenor Bostley's Preschool, Inc. (Employer) terminated Claimant's employment because she violated Employer's rule that required each child within its care to be supervised at all times. Claimant applied for unemployment compensation benefits. The Scranton UC Service Center (Service Center) determined that Claimant was ineligible for benefits. Claimant appealed the decision, and a referee held a hearing on May 15, 2009. Following the hearing, the referee issued her decision/order, reversing the Service Center's notice of determination and granting benefits. In support of her decision, the referee made the following findings of fact:

1. The claimant was last employed at Bostley[']s Pre–School as a full time preschool teacher at the rate of $7.65 per hour from February 26, 2007 through her last day worked of February 26, 2009.

2. The claimant was discharged for leaving a two year old child in a play room by himself while outside on the playground with the other children.

3. The employer had a policy which states in part that no child shall ever be left unattended or unsupervised at any time for any reason.

4. Our standard for supervision is that 100% of the children shall be supervised 100% of the time with no exceptions for any reason.

5. The employer's policy also provides that the following action will be taken for any lapse in supervision regardless of the duration: (1) the employee will be placed on an immediate two week unpaid suspension while the case is being reviewed; (2) subject to the findings of the review, the following may oc-

cur: (a) the employee's employment may be terminated, or (b) the employee may be reinstated in a probationary status for a period to be determined.

6. The claimant received a verbal warning from her direct supervisor on February 13, 2009 in regards to the 100% supervision policy.

7. On February 26, 2009, when taking the six two-year old children she was watching from the playroom to the playroom outside, the claimant counted that she had six children on her way out to the playground.

8. The claimant stumbled over her shoe string and fell into a slide.

9. Upon regaining her balance, the claimant turned around to close the door and was not aware that one of the six children went back inside the playroom.

10. The claimant began playing with the children she was supervising on the playground and a few minutes later noticed that one of the six children was missing, so began to look for him on the playground equipment.

11. The claimant's supervisor then came over to the claimant and asked her how many children she had to which the claimant responded she had six.

12. The claimant's supervisor responded, "no you have five, here is number six."

13. The claimant's supervisor contacted the executive director and then the executive director contacted the owner of Bostley's Pre–School and the decision was made to terminate

2009. (Claimant's Br. at 8, 10.) Accordingly, Claimant has raised and preserved for our appellate review the issue of whether the

Board erred in reversing the referee's decision in the face of uncontradicted evidence in the record to support the Referee's decision.

the claimant's employment that same day.

14. On February 26, 2009, the claimant violated the employer's 100% supervision policy.

The referee credited Claimant's testimony as to her explanation of the events giving rise to her termination and noted Employer's corroborating testimony during the hearing to the effect that Claimant's violation of Employer's 100% supervision policy was *not* intentional and was an honest mistake. In other words, Employer did not refute in any way Claimant's explanation of how the child became separated from the group of children.[3]

Employer appealed to the Board, which reversed the referee's decision. The Board made the following findings of fact:

1. The claimant was last employed as a Preschool Teacher by Bostley's Preschool from February 26, 2007 to February 26, 2009. Her final rate of pay was $7.65 per hour.

2. The employer's policy mandates that no child be left unsupervised or unattended for any amount of time. A violation of this rule may result in immediate termination.

3. The claimant knew of the employer's rule.

4. On or about February 13, 2009, the claimant received a verbal warning when she left a room of children unattended in order to help another child in the bathroom.

5. On or about February 26, 2009, the claimant was supervising a group of two-year-olds.

6. The claimant took the group from an indoor playroom to the outdoor playground.

7. The claimant's supervisor observed one of the children that the clamant was supervising playing alone in the indoor playroom. The supervisor recognized that the child was assigned to the claimant's group.

8. The supervisor returned the child to the claimant and reported the incident to the executive director of the school.

9. On February 26, 2009, the claimant was discharged for violating the employer's rule requiring each child to be supervised at all times.

As to Claimant's explanation of the events that led to the termination of her employment, the Board included the following in the discussion portion of its decision:

The claimant testified that the child was left unattended by accident. *The Board does not find the claimant's assertion credible in light of the fact that the employer had given the claimant a warning two weeks earlier, where she was told that she could not leave the children alone for any reason.* The claimant intentionally failed to observe the whereabouts is evident of the children in her care [sic]. Because she had failed to provide sufficient credible testimony or evidence to show good cause for

---

3. One of Employer's witnesses offered a closing statement, during which she testified:

> I would just like to say that this is not the first time that we have let somebody go for this reason. We have a policy; we enforce it. If children are not supervised, any staff member at any time should be able to walk up to them and ask them how many children they have in their care, should be able to tell us how many, and know those children by name. *Do I feel this was intentional? No. But accidents happen because things are not intentional, and that's why we have this policy.* We have to enforce it. (Transcript of Testimony at 15 (emphasis added).)

violation of the employer's rule, she must be denied benefits.

(Board Decision & Order at 2–3 (emphasis added).)

Whether the conduct of an employee constitutes willful misconduct is a matter of law subject to this Court's review. *Walsh v. Unemployment Comp. Bd. of Review,* 943 A.2d 363, 368 (Pa.Cmwlth.2008). The employer bears the burden of proving that the claimant's unemployment is due to willful misconduct. *Id.* The term "willful misconduct" is not defined by statute; however, the courts have defined "willful misconduct" as follows:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review,* 573 Pa. 594, 600, 827 A.2d 422, 425 (2003). An employer seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies must prove the existence of the rule or policy and that the claimant violated it. *Walsh,* 943 A.2d at 369. If, however, the claimant can show good cause for the violation—*i.e.,* "that the actions which resulted in the discharge were justifiable and reasonable under the circumstances"—then there should be no finding of willful misconduct. *Id.*

In this case, there is no dispute that Claimant violated Employer's 100% supervision rule. The referee, however, found that Claimant's violation did not rise to the level of willful misconduct in light of Claimant's uncontradicted testimony, which Employer's witness corroborated, that Claimant did not act intentionally when she allowed a child to become separated from the group of two-year old children that Claimant was supervising. The Board, however, concluded that Claimant's explanation was not credible. As the ultimate finder of fact, the Board certainly had the right to disbelieve Claimant, even though her testimony was uncontradicted. *Treon v. Unemployment Comp. Bd. of Review,* 499 Pa. 455, 460, 453 A.2d 960, 962 (1982). The Board, however, is not free to disregard findings of the referee based upon consistent and uncontradicted evidence without providing the reasons for its reversal. *Id.* at 461, 453 A.2d at 962. In *Treon,* the Pennsylvania Supreme Court explained:

> [T]he Board did not have the right to arbitrarily and capriciously disregard the findings of the referee after the referee had listened to the testimony of the only witness and observed his demeanor, and had made findings of fact based upon that uncontradicted testimony.
>
> If particular findings are inconsistent, incredible or unsupported by the evidence, then the Board must so indicate. The Board may not, however, simply disregard findings made by the referee which are based upon consistent and uncontradicted testimony without stating its reasons for doing so.

*Id.*[4]

This Court applied the Pennsylvania Supreme Court's decision in *Treon* in *Office*

---

4. The Majority concludes that *Treon* may not have been triggered in this case because the referee's findings of fact were based on inconsistent and contradictory testimony. The term "inconsistent" has been defined as "not compatible with another fact or claim." BLACK'S LAW DICTIONARY 834 (9th ed.2009). "Not compatible," or "incompatible," in turn, means "incapable of association or harmonious coexistence." MERRIAM WEBSTER'S COLLEGI-

of Attorney General v. Unemployment Compensation Board of Review, 111 Pa. Cmwlth. 187, 533 A.2d 1087 (1987) (OAG). In OAG, a willful misconduct termination case, the employer testified and presented evidence at the hearing before the referee. The claimant did not testify or offer evidence. The referee thus ruled in favor of the employer, concluding that the claimant knowingly lied and misled the employer. The claimant appealed. The Board reversed, finding that the claimant did not knowingly lie and mislead the employer. The employer appealed to this Court, contending that the Board erred "by disregarding the referee's findings of fact, without stating its reasons for doing so, where only [the employer] presented evidence before the referee and the Board heard no additional testimony." OAG, 533 A.2d at 1088.

This Court agreed, concluding that (a) the referee's findings were supported by the evidence adduced at the hearing, (b) the Board's reasons for reversing the referee's findings were not "plain enough" from the record, and (c) the Board did not set forth reasons for the reversal in its decision. Id. at 1089. Unable to determine why the Board reversed the referee, this Court vacated the Board's decision and remanded to give the Board an opportunity to set forth its reasons for reversing the referee's decision. Id.

In this case, although the Board purports to give a reason for rejecting Claimant's uncontradicted testimony and the referee's findings and conclusions based thereon, more than a cursory review of the Board's explanation reveals that it is no explanation at all. The Board's purported

ATE DICTIONARY 588 (10th ed.1997). Testimony is inconsistent, therefore, where two statements cannot exist in the same space.

The Majority maintains, first, that Claimant's testimony was internally inconsistent, stating:

[I]n Claimant's original appeal of the denial of benefits by the Unemployment Compensation Service Center, she stated "I did not realize this child had run back inside until my Director [Schon] brought it to my attention." Appeal of Denial of Claim, April 17, 2009, at 1. In her testimony before the referee, Claimant testified that she tripped over her shoe strings and then recovered and picked up her roll book. As she began to play with the children, she realized that the child was missing. Claimant's statements are inconsistent and contradict one another.

(Majority Op. at 440.) Viewed in the context of Claimant's entire testimony, it is apparent that these statements are not inconsistent. Without question, Claimant's statement to the UC Service Center has no bearing on Claimant's testimony that she lost sight of the child when she tripped over her shoelaces. For example, it is not as if Claimant informed the UC Service Center that she lost sight of the child because she was using her cell phone.

Moreover, simply because Claimant did not realize the child was *inside* does not mean she did not realize the child was missing. Claimant testified that, upon recovering from her fall, she became aware the child was missing and began searching the outdoor playground area, not realizing the child had gone back inside. (Transcript of Testimony at 13–14.)

The Majority further posits that Claimant's testimony was contradicted by Ms. Schon's testimony that: "I went to proceed to ask [Claimant] how many children she had ... and she stated that she had six, and I said, 'No,' I said, 'You have five, because here is your sixth one.' " (Transcript of Testimony at 9.) The Majority interprets this testimony to mean that Claimant was not aware the child was missing until Ms. Schon presented her with the child, thereby refuting Claimant's testimony that she discovered the child was missing after she recovered from her fall. Just as plausible of an interpretation, however, is that Claimant answered that she had six children because Claimant, in fact, had six children under her charge on February 26, 2009. Merely because testimony is capable of being interpreted differently does not mean that it is inconsistent—especially where Claimant's own account of the above exchange is virtually identical to Ms. Schon's account.

reason for finding Claimant's testimony not credible is "the fact that the employer had given the claimant a warning two weeks earlier, where she was told that she could not leave the children alone for any reason." (Board Decision & Order at 2.) This fact, which is also undisputed, does not explain the Board's decision to discredit Claimant's account of the events on February 26, 2009, for which Employer terminated Claimant's employment. At most, this fact merely shows that Claimant was aware of Employer's 100% supervision rule; therefore, it goes only to the issue of whether Employer met its burden to prove that it terminated Claimant's employment for willful misconduct—in this case, a violation of a work rule.

Claimant does not dispute that she knew of Employer's 100% supervision rule or that Employer previously reprimanded her for failing to follow the rule. Even the referee concluded that Claimant violated the work rule. The referee's findings and conclusions at issue in this appeal relate, instead, to Claimant's effort to show "good cause" for the violation of the work rule. The referee concluded that Claimant met her burden through her uncontradicted testimony that on February 26, 2009,

Claimant tripped and fell into a slide while supervising a group of six two-year olds. As a result, she lost sight of one of the children, who ran inside while she was in the process of falling and regaining her balance. (Referee Findings of Fact Nos. 7–9.) The referee accepted this uncontradicted testimony as truthful, noting also that Employer's witness agreed that Claimant did not act intentionally.

Under *Treon*, if the Board wished to reach contrary findings (which it was entitled to do), the Board was required to state its reasons for doing so. The referee's findings with respect to the events on February 26, 2009, which supported the referee's conclusion that Claimant's employment was not terminated for "willful misconduct," are supported by Claimant's uncontradicted testimony and Employer's corroborating testimony during the hearing before the referee. The Board has not set forth its reason for reversal, and the Board's reason for reversal is not "plain enough" from the record. *See OAG*, 533 A.2d at 1089.

Because I am unable to determine *why* the Board reversed the referee, there is not an adequate basis for judicial review.[5]

---

**5.** The Majority's final contention is that Claimant would be ineligible for benefits even if the Board failed to explain its reasoning for rejecting Claimant's testimony, because such an error is harmless. The Majority concludes that Claimant did not have good cause for violating Employer's rule regardless of whether her actions constituted an honest mistake because Claimant admitted that she did not perform a roll count of the children after she recovered from her fall. In support, the Majority cites *Heitczman v. Unemployment Compensation Board of Review*, 162 Pa.Cmwlth. 275, 638 A.2d 461, *appeal denied*, 538 Pa. 660, 648 A.2d 791 (1994).

In *Heitczman*, the employer's policy required its truck drivers to walk completely around their trucks before driving in reverse to ensure that their path of travel was clear.

Without performing a "walk around," Heitczman backed up his truck and collided with a light standard, damaging the truck and the light standard. The employer terminated the claimant for violation of the "walk around" policy and Heitczman filed for unemployment compensation. Before this Court, Heitczman argued that his conduct was merely negligent and did not constitute willful misconduct because he did not deliberately back up the truck improperly. Determining that Heitczman did not have adequate justification for violating the employer's policy, we stated:

[T]here is no question of mistake. [Heitczman] knew of the existence of the work rule, specifically failed to follow it by backing up his truck without making a "walk around" and, as a result, hit the light standard that crashed onto the roof of his Em-

Accordingly, I would vacate the Board's decision and order and remand the matter to the Board so it may reconsider the matter.

Judge LEAVITT joins in this dissenting opinion.

ployer's truck. Such conduct ... is more akin to disobedience of a direct instruction. *Id.* at 281, 638 A.2d 461.

Here, Employer's policy required that 100% of the children be supervised 100% of the time. To comply with this policy, the Majority concludes that Claimant should have counted the children once outside. The Majority maintains that Claimant's failure to do so was akin to Heitczman's failure to perform a "walk around." The employer's policy in *Heitczman,* however, imposed an affirmative duty on truck drivers to perform a "walk around" before backing up. Heitczman's failure to perform a "walk around," therefore,

was a clear violation of the employer's policy, regardless of whether striking the light standard was an honest mistake. In contrast, Claimant's failure to count the children immediately upon exiting the building was not a clear violation of Employer's 100% supervision policy. While this might be an effective method for ensuring 100% supervision of the children at all times, the language of the Employer's policy did not clearly and unequivocally mandate roll calls or counts. Thus, the Majority is attempting to engraft a requirement on Claimant not imposed by Employer's work rules.