# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ann L. Craig, : 
: No. 1780 C.D. 2015
Petitioner : Submitted: March 18, 2016
:
v. :
:
Unemployment Compensation :
Board of Review, :
:
Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  May 20, 2016


Ann L. Craig (Claimant) petitions for review of the August 3, 2015, order of the Unemployment Compensation Board of Review (UCBR) affirming the decision of a referee to deny Claimant unemployment compensation (UC) benefits.  The UCBR determined that Claimant was ineligible for UC benefits because she was discharged from work for willful misconduct under section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [her] unemployment is due to [her] discharge . . . from work for willful misconduct connected with [her] work."  43 P.S. §802(e).

Claimant worked full-time as a staff accountant for the Coalition to End Childhood Lead Poisoning (Employer) from November 10, 2008, through March 4, 2015. (Findings of Fact, No. 1.) Employer's financial internal controls policy (Controls Policy) states that all disbursements must be made by check. (*Id.*, No. 2.) Claimant signed an acknowledgment of Employer's Controls Policy. (*Id.*, No. 3; N.T., 5/27/15, at 7; Employer's Ex. 5.)

In January 2015, a check that Employer had mailed to its workers' compensation (WC) insurance carrier was returned to Employer due to an incorrect address. (Findings of Fact, No. 4.) Claimant then paid the WC insurance carrier by a bank transfer over the telephone. (*Id.*, No. 5.) Claimant did not discuss this matter with Employer before making the bank transfer. (*Id.*, No. 6.) Employer confronted Claimant after Employer received a cancellation notice from its WC insurance carrier, and Claimant admitted that she violated Employer's Controls Policy. (*Id.*, Nos. 7-8.) On January 21, 2015, Ruth Ann Norton, Employer's president and chief executive officer, informed Claimant that her disbursement by telephone was a serious infraction to which Employer was considering its response. (*Id.*, No. 9.) On March 4, 2015, Employer discharged Claimant for making a disbursement by telephone. (*Id.*, No. 10.)

Claimant filed a claim for UC benefits, which the local service center granted. Employer appealed to a referee, who held a telephone hearing on May 27, 2015. Claimant testified that when she received the returned check in January 2015, she made the disbursement by telephone. (N.T., 5/27/15, at 41.) Claimant testified that she did not believe she was violating Employer's Controls Policy at the time she made the disbursement. (*Id.* at 44.) Claimant testified that she did not consult anyone before

2

making the disbursement by telephone but informed Victor Arthur, Employer's comptroller, after the fact. (*Id.* at 46.) Claimant testified that she did not remember why she did not consult anyone before making the disbursement. (*Id.* at 55.)

Norton testified on behalf of Employer. Norton testified that Employer's Controls Policy requires that disbursements be made by check. (*Id.* at 20; Employer's Ex. 4.) Norton testified that the purpose of this requirement is to enable Employer to track disbursements and prevent unauthorized transactions. (N.T., 5/27/15, at 17.) Norton testified that Employer does not permit its employees to make disbursements by telephone. (*Id.* at 24-25.) Norton also testified that Claimant knew that Employer's Controls Policy prohibited disbursements by telephone. (*Id.* at 23-24.) Norton testified that when she met with Claimant to discuss the disbursement, Claimant admitted that her conduct violated Employer's Controls Policy. (*Id.* at 14-15.) Finally, Norton testified that she did not immediately discharge Claimant because she wanted to gather information about Claimant's violation and discuss the matter with Employer's board of directors and financial officers. (*Id.* at 18-19.)

Thomas Bellew also testified on Employer's behalf. Bellew was Employer's chief financial officer from April 2014 through March 2015. (*Id.* at 30.) Bellew testified that Claimant trained him on Employer's Controls Policy when he was first hired. (*Id.* at 30-31.) Bellew testified that Claimant's disbursement by telephone constituted an unauthorized bank transfer. (*Id.* at 32.) Bellew testified that in order to make a bank transfer, the staff accountant must complete a transmittal approval form. (*Id.*) Bellew testified that Employer does not permit bank transfers by telephone. (*Id.* at

3

36.) Bellew testified that "having a signed check is not the same as having approval to make a bank transfer." (*Id.*)

Arthur also testified on Employer's behalf. Arthur testified that Employer first learned of the disbursement at issue when he reviewed a cancellation notice from Employer's WC insurance carrier. (*Id.* at 49.) Arthur testified that he asked Claimant about the disbursement and Claimant acknowledged that she made the disbursement by telephone. (*Id.*)

The referee resolved all conflicts in the testimony in Employer's favor. (Ref.'s Decision at 2.) The referee determined that Employer's Controls Policy prohibited disbursements by telephone, Claimant was aware of the Controls Policy, and Claimant breached the Controls Policy by making a disbursement by telephone. (*Id.*) The referee found that Claimant did not inform Employer that she made a disbursement by telephone until after Employer confronted her. (*Id.*) Additionally, the referee credited Norton's testimony that the delay in Claimant's discharge was due to Employer's investigation of Claimant's disbursement by telephone. (*Id.*) Claimant appealed to the UCBR, which adopted the referee's findings of fact and conclusions of law and affirmed. Claimant now petitions this court for review of that decision.[2]

First, Claimant argues that the UCBR erred in determining that she engaged in willful misconduct. We disagree.

---

[2] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

4

"Willful misconduct" is defined as: (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules or policies; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or (4) negligence that manifests culpability, wrongful intent, evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations. *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010) (*en banc*). When a claimant is discharged for violating the employer's policy, the employer bears the burden of proving the existence of the policy, that the policy was reasonable, and that the claimant was aware of and violated the policy. *Rothstein v. Unemployment Compensation Board of Review*, 114 A.3d 6, 9 (Pa. Cmwlth. 2015). If the employer satisfies its burden, the burden shifts to the claimant to establish that she had good cause for violating the employer's policy. *Id.* "Good cause is demonstrated if the claimant's conduct was justified or reasonable under the circumstances." *Id.*

Here, Employer's Controls Policy states that disbursements must be made by check. The UCBR credited Norton's and Bellew's testimony that disbursements by telephone are not permitted under the specific language of the Controls Policy. Claimant did not contradict Norton's and Bellew's testimony that Employer prohibits disbursements by telephone because they would jeopardize the security and accountability of Employer's finances. Based on Claimant's signed acknowledgement and Norton's and Bellew's credited testimony, the UCBR found that Claimant was aware of and had trained other employees in the Controls Policy. Finally, Claimant did not contradict the credited testimony of Employer's witnesses that Claimant admitted

5

that her disbursement by telephone violated the Controls Policy. Therefore, Employer met its burden.

The burden then shifted to Claimant to establish good cause for violating Employer's Controls Policy. Claimant testified that she made the disbursement by telephone in order to prevent Employer's WC insurance coverage from being cancelled. However, Claimant's conduct was not reasonable under the circumstances because she admitted that she failed to consult a supervisor before she made a disbursement that violated Employer's Controls Policy. At the hearing, Claimant could not explain why she failed to take these precautions. Therefore, Claimant failed to establish good cause for violating Employer's Controls Policy.

Second, Claimant argues that the remoteness doctrine precludes a finding of willful misconduct because of the delay in her discharge from employment. We disagree.

The remoteness doctrine provides that "[a]n incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Tundel v. Unemployment Compensation Board of Review*, 404 A.2d 434, 436 (Pa. Cmwlth. 1979). However, the remoteness doctrine does not apply "where the record establishes an explanation for the delay . . . and there is no action on the part of the employer indicating that it condoned the claimant's conduct." *Raimondi v. Unemployment Compensation Board of Review*, 863 A.2d 1242, 1247 (Pa. Cmwlth. 2004).

6

Here, Claimant made a disbursement by telephone in January 2015 and was discharged for that conduct on March 4, 2015. The UCBR credited Norton's testimony that the delay was due to Employer's investigation into Claimant's conduct. Norton explained that she needed to gather information about Claimant's violation and discuss the matter with Employer's board of directors and financial officers. Claimant argues that the referee and UCBR erred in crediting Norton's testimony. However, the UCBR is the ultimate factfinder and arbiter of witness credibility. *Procito v. Unemployment Compensation Board of Review*, 945 A.2d 261, 262 n.1 (Pa. Cmwlth. 2008) (*en banc*). Additionally, Claimant does not point to any instance where Employer indicated that it condoned Claimant's conduct. Therefore, the remoteness doctrine is inapplicable and did not preclude the UCBR's finding of willful misconduct.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ann L. Craig,                                   :
                                                : No. 1780 C.D. 2015
                            Petitioner           :
                                                :
                    v.                           :
                                                :
Unemployment Compensation                        :
Board of Review,                                 :
                                                :
                          Respondent             :


O R D E R


AND NOW, this 20<u>th</u> day of <u>May</u>, 2016, we hereby affirm the August 3, 2015, order of the Unemployment Compensation Board of Review.


_____
ROCHELLE S. FRIEDMAN, Senior Judge