Department of Corrections,        :
        Petitioner     :
               :
        v.         :
               :
Unemployment Compensation     :
Board of Review,        :  No. 765 C.D. 2016
        Respondent   :  Submitted: November 23, 2016

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE JULIA K. HEARTHWAY, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE          FILED: April 24, 2017

       The Department of Corrections (Department) petitions for review of the April 13, 2016 order of the Unemployment Compensation (UC) Board of Review (Board) granting unemployment benefits to Frank Taylor (Claimant). Upon review, we affirm.

       Claimant was employed by the Department from March 28, 2012 to December 23, 2015. He worked as a Community Corrections Center Monitor, and was stationed at a community corrections center, commonly known as a halfway house. At the start of his employment with the Department, Claimant was provided with the Department's Code of Ethics (Code), and signed a written acknowledgment that he read and understood the Code. (R.R. at 3a.). Rule B(2) of the Code provides that "[o]nly the minimum amount of force to defend oneself

or others, to prevent escape, to prevent serious injury or damage to property or to quell a disturbance or riot will be used.  Excessive force, violence or intimidation will not be tolerated.  Fighting or horseplay while on duty is prohibited." (R.R. at 6a).

On the evening of December 22, 2015, Claimant had an altercation with a resident of the halfway house.  The exact nature of the words exchanged is in dispute in the present case, but it is undisputed that the altercation escalated, culminating with Claimant yelling at the resident, and pushing him to the floor. The incident was captured on the facility's video surveillance system.  No audio was recorded.

Claimant was suspended by the Department on December 24, 2015, pending an investigation into the incident.  (R.R. at 1a-2a.)  Claimant applied for UC benefits and was determined by the Erie Service Center (Service Center) to be ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  Following a hearing in front of the Referee, the determination of the Service Center was reversed and Claimant was awarded UC benefits.  Department appealed the decision of the Referee to the Board.  The Board adopted and incorporated the findings and conclusions of the Referee and affirmed his decision. This appeal followed.[2]

---

[1] Section 402(e) of the Law provides that *"*[a]n employe shall be ineligible for compensation for any week…[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act[.]"  Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

[2] This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or

2

Department raises two issues for this Court.

(1)    Can mere verbal threats ever constitute good cause for violating the Department's Use of Force Policy as a matter of law?

(2)    In the alternative, are the Referee's findings that a community correction center resident threatened Claimant's children based on unsubstantiated hearsay?

In evaluating unemployment compensation cases in which an employee was terminated for willful misconduct, the burden of proving willful misconduct is on the employer. *Guthrie v. Unemployment Compensation Board of Review,* 738 A.2d 518, 521 (Pa. Cmwlth. 1999). The definition of willful misconduct includes a deliberate violation of an employer's rules. *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484, 487. (Pa. Cmwlth. 2014). "If the employer proves the existence of the rule, the reasonableness of the rule, and the fact of its violation, the burden of proof shifts to the claimant to prove that he had good cause for his action." *Guthrie,* 738 A.2d at 522.

There is no dispute the rule existed and Claimant was aware of the rule.[3] Section B(2) of the Code provides that only the minimum amount of force necessary to defend oneself or others may be used. (R.R. at 6a.) At no time has Claimant argued the rule is not reasonable. Claimant does dispute the assertion he violated the rule. He therefore argues that, because Department never established

---

findings of fact were not supported by substantial evidence. *Oliver v. Unemployment Compensation Board of Review,* 5 A.3d 432, 438 n.2 (Pa. Cmwlth. 2010).

[3] At the hearing before the Referee, Department's witness testified that Claimant was charged with four separate infractions, implicating four separate sections of the Code. Department has only challenged the Referee's findings regarding a violation of Section B(2) of the Code.

Claimant violated the rule, the burden never shifted to him to prove he had good cause for his actions.

Claimant testified to the events that took place on December 22, 2015. He asked one of the residents, Mr. Johnson, to start his clean up chores and Mr. Johnson refused. (R.R. at 43a.) After some "back and forth," threats were made by Mr. Johnson against Claimant. *Id.* at 44a. Claimant then testified that threats were made against his children. *Id.* Mr. Johnson repeated his threats several times, looking directly in Claimant's eyes, making a move towards him. *Id.* at 45a. Claimant testified that after Mr. Johnson moved towards him, he felt threatened and pinned Mr. Johnson down. *Id.* Claimant thereafter released Mr. Johnson and ordered him to his room. *Id.* Claimant left the room and called to check on his children. *Id.* He gathered his belongings and left for the evening. *Id.*

Department argues the use of force in response to verbal threats is never justified. The rule permits minimal force to be used only in the limited circumstances in which a corrections monitor is defending himself or others or to prevent escape. Department contends that "nowhere does this policy even suggest that use of force can ever be justified by mere words, no matter how provoking, insulting or threatening." (Petitioner's Brief at 9.) Department does not suggest that Claimant used excessive force, but maintains the use of even minimal force constitutes a violation of the rule. As Claimant admitted to his use of force, and that he initiated contact between himself and the resident, Department maintains it met its burden in establishing the rule, and the fact of its violation. But in so doing, it seemingly ignores the fact that Mr. Johnson made a move toward Claimant while making the threats.

Section B(2) of the Code clearly permits the use of force to defend oneself or others. The Referee found Claimant used force based on Mr. Johnson having made threats to kill Claimant's children, but that force was not excessive. (R.R. at 58a.) The Referee found Claimant credibly testified Mr. Johnson knew Claimant had children because he had seen them at the grocery store, Mr. Johnson was allowed to use a cell phone at the halfway house, and, as far as Claimant knew, Mr. Johnson could have used the phone to call someone to carry out his threats. *Id.* In his decision/order, the Referee found that Claimant reacted with appropriate force and, to the extent his use of force was not permitted under the Code, the Referee found it was a justified reaction to a serious threat. *Id.*

The Referee was in the best position to judge and determine Claimant's credibility. Credibility determinations are within the Board's discretion and not subject to reevaluation on judicial review. *Graham v. Unemployment Compensation Board of Review,* 840 A.2d 1054 (Pa. Cmwlth. 2004). The Referee viewed the surveillance video and determined the use of force was either not in contravention of the policy, or, based on Claimant's credible testimony, a justified reaction to a threat. Good cause for violating a work rule is established where the action of the employee is justifiable or reasonable under the circumstances. *Frumento v. Unemployment Compensation Board of Review,* 351 A.2d 631, 634 (Pa. 1976). Having reviewed the record, we will not disturb the Referee's finding that Claimant was justified in using force and, thus, had good cause to violate the Department's Code.

Department next argues the referee's finding that threats were made against Claimant's and his children's lives are not supported by substantial evidence, but only hearsay. Upon appeal, the Board's finding of facts are taken as

5

conclusive, "so long as the record, taken as a whole, contains substantial evidence to support those findings." *Penflex, Inc. v. Bryson,* 485 A2d 359, 365 (Pa. 1984). Substantial evidence is "such relevant evidence which a reasonable mind accepts as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d at 521. The Commonwealth Court has long established that "[h]earsay evidence, admitted without objection, will be given its natural probative effect and may support a finding of the Board, if it is corroborated by any competent evidence on the record, but a finding of fact based solely on hearsay will not stand." *Walker v. Unemployment Compensation Board of Review,* 367 A.2d 366, 370. (Pa. Cmwlth. 1976).

Department argues the Referee erred in his findings of facts relating to the nature and content of the threats made by the resident against Department. Specifically, Department challenges findings 10, 12, 13 and 14, all of which are findings on what Mr. Johnson said to Claimant before Claimant pushed him down.[4] Department argues that the only evidence offered to support these findings

---

[4] The Referee's decision listed the following findings of fact that are in dispute:

> 10. The resident threatened Claimant, but no one else at that time…
>
> . . . .
>
> 12. After Claimant laughed about these threats, the resident added that he threatened to kill Claimant and his children.
> 13. Claimant became angry at the threat to kill his children and told the resident that whatever the resident wanted to do with him, the resident should keep his children out of it.
> 14. The resident then leaned towards Claimant after again repeating, in a very serious tone, that he would kill Claimant and his children.

R.R at 57a.

6

is the testimony of Claimant in which he recounts what Mr. Johnson said to him. (R.R. at 43a-44a). Department points out that even though there were several witnesses to the altercation, not to mention the resident himself, Claimant failed to call any one of them to corroborate his version of events. Though video footage of the altercation was presented at the hearing which showed the resident speaking to Claimant, there is no accompanying audio recording to corroborate what was actually said to Claimant by the resident. Department contends that under the standard articulated by this court in *Walker*,[5] the Claimant's testimony alone is not enough to support a finding of fact. Therefore, the findings of fact relating to what the resident said to Claimant cannot stand.

Claimant argues this testimony need not be corroborated to be admissible in a hearing, and, further, it need not be corroborated to be relied upon by the Referee and the Board in making findings of fact. Claimant argues that a witness is competent to give testimony if he has personal knowledge of the matter, and Claimant's testimony is thus sufficient as "Claimant had personal knowledge of the threat." (Respondent's brief at 8). Claimant further argues that, even if his testimony is hearsay, it goes to his state of mind, and not to the truth of the matter, and is thus admissible. (Respondent's Brief at 9).

We agree with Claimant that his testimony is not hearsay, since it does not involve an extrajudicial statement, but rather an observation based on

---

[5] In *Walker* this court reconciled and clarified two seemingly conflicting lines of rulings regarding the use of hearsay evidence in administrative hearings. The first line held that findings based solely on hearsay could not stand, and the second that hearsay admitted without objection would be given its natural probative effect. The court found that "[h]earsay evidence admitted without objection will be given its natural probative effect and may support a finding of fact of the board if it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand." *Id.* at 370.

Claimant's personal knowledge of the conversation he had with Mr. Johnson. "It is hornbook law that what a person knows firsthand from his own knowledge is not hearsay, and that out-of-court statements that are not offered to prove the truth of the matter but rather to explain a course of conduct are non-hearsay." *Commonwealth v. Hashem,* 525 A.2d 744, 764 (1987), *rev'd on other grounds,* 584 A.2d 1378 (Pa. 1991). Claimant had personal knowledge about what Mr. Johnson said to him and those statements were offered to explain Claimant's resultant reaction and course of conduct. Under these circumstances, the statements in question simply cannot be deemed inadmissible hearsay.

For these reasons, the order of the Board is affirmed.

_____
JOSEPH M. COSGROVE, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Corrections,         :
         Petitioner    :
         :
         v.         :
         :
Unemployment Compensation    :
Board of Review,         :    No. 765 C.D. 2016
         Respondent    :

## O R D E R

AND NOW, this 24th day of April, 2017, the April 13, 2016 order of the Unemployment Compensation Board of Review is affirmed.

_____
JOSEPH M. COSGROVE, Judge