IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey M. Kengerski,                    :
                    Petitioner        :
                                    :
             v.                            :
                                    :
Unemployment Compensation                :
Board of Review,                         :    No. 484 C.D. 2016
                  Respondent        :    Submitted:  November 18, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE                    FILED:  April 19, 2017

         Jeffrey Kengerski (Claimant) petitions for review of a March 2, 2016 Decision and Order of the Unemployment Compensation Review Board (Board), which denied Claimant unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law).  Upon review, we affirm.

         Claimant was employed as a full-time corrections officer with the rank of captain by the Allegheny County Jail (Employer) from February 2002 until November 24, 2015.[2] In September 2015, a subordinate female corrections officer,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

[2] Except where noted otherwise, the facts are derived from the findings of fact set forth in the order of the Board dated March 2, 2016.

Alyssia Tucker (Tucker), reported to Claimant that she had received unwanted texts and e-mails from a co-worker, Sergeant Michael Brown (Brown) and Brown's wife. Claimant reported this to a Major at the jail, but took no further action. (Certified Record (C.R.) Item 9, Transcript of Testimony with Exhibits, at 21.) Tucker resolved the issues with Brown and his wife on her own.

Two months after the complaint was filed, Claimant attended a mandatory sexual harassment training seminar, after which he realized he should have reported the incident with Tucker and Brown to his superior. The Major to whom he previously reported was no longer at the jail and Claimant was unsure whether the matter had been handled correctly. (C.R., Transcript at 21.) Therefore, Claimant reported the incident to Deputy Warden Wainwright (Wainwright), who advised Claimant he was concerned the matter had not been reported previously and directed Claimant to submit a report. Wainwright also directed Tucker to submit a report detailing the incident with Brown.

Claimant called Tucker and advised her to write in her report that she and Brown met with the Major and resolved the issue. Tucker submitted a report but declined to include this information and informed Wainwright that Claimant asked her to lie in her report. Claimant approached Brown and notified him about the investigation taking place and asked him to report having met with the Major. Brown reported to his union representative that Claimant informed him about the investigation and that Claimant asked him to lie about meeting with the Major.

On November 24, 2015, Claimant was discharged for interfering with the investigation. More specifically, he was terminated for directing a subordinate officer to lie in a report and for informing the subject of the investigation that he was being investigated. Claimant applied for and was granted unemployment

compensation benefits. Employer appealed to a referee, who held a hearing and issued a decision denying Claimant benefits. Claimant appealed to the Board, which issued an order on March 2, 2016, affirming the decision of the Referee. Claimant appealed[3] to this Court.

As set forth in his brief, Claimant raises the following two issues:

(1) Whether the Employer provided competent and admissible evidence before the Referee on why Petitioner/Claimant was terminated.

(2) Whether the two (2) other Employer fact witnesses were credible.

Claimant first argues Employer failed to establish he committed willful misconduct because Employer presented no witness with first-hand knowledge of the termination.

Wainwright testified he received reports from and interviewed both Tucker and Brown about Claimant's attempts to influence their reports. (C.R. Transcript at 10.) Wainwright was not involved in the decision to terminate Claimant. *Id.* That decision was made by the Warden. *Id.* As Wainwright was not the Warden, it is arguable he lacked first-hand knowledge of the reason for Claimant's termination. This lack of first-hand knowledge, Claimant appears to argue, renders Wainwright's testimony incompetent and inadmissible hearsay.

A witness is competent to testify about matters of which he has personal knowledge. Pa.R.E. 602. "Testimony as to an out-of-court statement is

---

[3] This Court's review is limited to a determination of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Oliver v. Unemployment Compensation Board of Review,* 5 A.3d 432, 438 n.2 (Pa. Cmwlth. 2010).

not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made." *Commonwealth v. Sampson*, 311 A.2d 624, 626 (Pa. Super. 1973). Wainwright personally interviewed Tucker and Brown and testified to the information divulged to him during those interviews. We cannot conclude Wainwright's testimony was either incompetent or hearsay.

A review of the record makes the reasons Claimant was terminated abundantly clear. Claimant's own exhibits offered at the hearing in front of the Referee refute his argument that no admissible evidence was presented as to the reasons for Claimant's termination. A memorandum from the Warden to Claimant notified him a post-termination hearing was scheduled to give Claimant an opportunity to respond to the charges that led to his termination. This memorandum unequivocally stated Claimant was terminated based on: 1) receipt of a report from Tucker that Claimant instructed her to lie on an official report; and 2) receipt of a report from Brown that Claimant gave him advance warning of the sexual harassment investigation and Claimant instructed Brown to lie on an official report. (C.R. at C-3.)

Section 402(e) of the Law provides that *"*[a]n employe shall be ineligible for compensation for any week… [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act[.]"[4] While the burden to show Claimant committed willful misconduct certainly falls on the Employer, *Guthrie v. Unemployment Compensation Board of Review,* 738 A.2d 518, 521 (Pa. Cmwlth. 1999), a letter of

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

4

termination need not include those words before a Claimant may be denied benefits under Section 402(e) of the Law.

Despite Claimant's argument to the contrary, it is abundantly clear the evidence presented against him was competent, and did not constitute inadmissible hearsay.

Claimant next argues that Employer's fact witnesses were not credible. While subject to our review as the first judicial officers examining the matter, in unemployment compensation review cases, the Board is the ultimate finder of fact and arbiter of credibility. *See Ductmate Industries, Inc. v. Unemployment Compensation Board of Review,* 949 A.2d 338 (Pa. Cmwlth. 2008). Upon appeal the Board's finding of facts are taken as conclusive, "so long as the record, taken as a whole, contains substantial evidence to support those findings." *Penflex, Inc. v. Bryson,* 506 A.2d 274 (Pa. 1984). Substantial evidence is "such relevant evidence which a reasonable mind may accept as adequate to support a conclusion." *Guthrie*, 738 A.2d at 521.

Claimant argues there was not substantial evidence to support the Board's findings, as the witnesses presented by the Employer were not credible and presented inconsistent testimony. The testimony of Tucker, Claimant contends, was inconsistent and did not support a finding he instructed her to lie. Additionally, Claimant argues that Sergeant Brown gave inconsistent testimony, first stating he knew about the investigation before he spoke to the Claimant, then testifying he heard about the investigation for the first time from Claimant. Claimant contends that the evidence presented at the hearing thus did not amount to substantial evidence, as the witnesses weren't credible.

5

In the report submitted by Brown, he avers that on November 23, 2015, he was notified of a situation involving allegations of sexual harassment. (C.R. Exhibit 6.) As Brown was headed to a meeting with his union representative, he was informed Claimant wished to speak with him. *Id.* Brown alleged in his report that Claimant didn't want him "blind-sided when administration [called him] over about this." *Id.* Brown further alleged Claimant told him "don't say anything about this conversation, if anybody asks say we spoke about fantasy football." *Id.* Brown testified at the January 12, 2016 hearing that he was heading to a meeting with his union representative when asked to speak with Claimant. (C.R., Transcript at 19-20.) Brown also testified that Claimant made him aware of the pending investigation. *Id.* at 17. The remainder of Brown's testimony is entirely consistent with the details set forth in the report he submitted. *Id.* at 17-18. Claimant testified he believed Brown was already aware of the investigation the day he spoke to him. *Id.* at 22, 27-28.

Claimant's argument hinges on his assertion that the witnesses against him were not credible. To the extent the testimony of Brown is inconsistent with the report he filed (whether he knew about the sexual harassment allegations prior to Claimant approaching him), the Board is the ultimate fact-finder. It determines the credibility of the witnesses and the weight assigned to evidence. The Board explicitly resolved conflicts in testimony in favor of Employer and found that Claimant's actions in giving advance notice to Brown of the investigation and in attempting to influence the reports filed by Brown and Tucker were below the standards of behavior the Employer had a right to expect. Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board and are not subject to re-evaluation on judicial review. *Peak v.*

*Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985). Credibility findings of the Board generally cannot be disturbed.

For these reasons, the Order of the Board is Affirmed.

_____
JOSEPH M. COSGROVE, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey M. Kengerski,                          :
                Petitioner    :
                                     :
         v.                                      :
                                     :
Unemployment Compensation        :
Board of Review,                            :   No. 484 C.D. 2016
                Respondent    :

## O R D E R

AND NOW, this 19th day of April, 2017, the March 2, 2016 Order of the Unemployment Compensation Board of Review is affirmed.

                                      _____
                                        JOSEPH M. COSGROVE, Judge