IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Offiong A. Ubom,                          :
            Petitioner          :
                                          :
    v.                                   :  No. 1236 C.D. 2021
                                          :  Submitted:  April 22, 2022
Unemployment Compensation                 :
Board of Review,                          :
            Respondent           :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                FILED:  June 10, 2022

Offiong A. Ubom (Claimant) petitions for review, *pro se*, of the October 4, 2021 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits because he committed disqualifying willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm the Board's Order.

## Background

Claimant worked as a slitter/bailer for Pratt Allentown Corrugating LLC (Employer) from September 17, 2018 through March 19, 2021.  Bd.'s Finding of Fact (F.F.) No. 1; Record (R.) Item No. 1.  In the early morning hours of March 20, 2021,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to his discharge from work for willful misconduct.  43 P.S. § 802(e).

Claimant slept at work during his scheduled shift without authority to do so. Bd.'s F.F. No. 2; Notes of Testimony (N.T.), 7/8/21, at 6-7.[2] Later that day, Employer discharged Claimant for sleeping on the job. Bd.'s F.F. No. 3; N.T., 7/8/21, at 6. On his Internet Initial Claims form, Claimant stated that he was discharged for sleeping on the job, he was aware that Employer had a rule prohibiting sleeping on the job, he violated the rule, and he knew that the rule was uniformly enforced. Bd.'s F.F. No. 4; R. Item No. 2.

Claimant filed a claim for UC benefits, which the local UC Service Center granted. The Service Center determined, based on its review of the claim record, that Employer discharged Claimant for sleeping on the job. R. Item No. 4. The Service Center found, however, that Claimant had good cause for sleeping on the job because Claimant stated that his job required two people, his co-worker quit one month earlier, and he "had to work 12 hours every[]day for more than [one] month with no replacement." *Id.* Thus, the Service Center determined that Claimant was not ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Employer appealed to the Referee, who held a telephone hearing on July 8, 2021. Claimant appeared *pro se* and testified on his own behalf. Employer presented the testimony of its Human Resources Manager, Estelle Gehringer.

Ms. Gehringer testified that she terminated Claimant's employment on March 20, 2021 for sleeping on the job because Claimant "was found sleeping on the forklift[] while the forklift was in the middle of the production area . . . in the wee hours of the morning." N.T., 7/8/21, at 6. Ms. Gehringer explained that "an employee found

_____

[2] The Board found that Claimant's sleeping incident occurred on March 19, 2021. Bd.'s F.F. No. 2. However, the record shows that while Claimant's overnight shift began on March 19, 2021, the sleeping incident actually occurred in the early morning hours of March 20, 2021. N.T., 7/8/21, at 6-7, 12; *see* R. Item No. 7 (stating that the sleeping incident occurred around 1:45 a.m.).

[Claimant] sleeping in the forklift, took [a] picture, [and] contacted his supervisor." *Id.* Immediately after learning of the sleeping incident, the supervisor sent Claimant home. Ms. Gehringer testified:

> [L]ater, I received a phone call from the plant letting me know that [Claimant] had come in on his own, and began working, although he was instructed not to. So[] they pulled him off the [production] floor, and at that time I was able to speak with him and let him know that his assignment had been ended for sleeping on the job.

*Id.* at 7.

Ms. Gehringer then explained the reasons for Claimant's discharge as follows:

> I need you to understand that this [picture was taken] in the middle of our production floor. . . . [Claimant's] foot was near the gas pedal. The other foot was toward[] the exit and entering bay . . . . His head was resting on . . . the head rest of [the] vehicle. Regardless, if there was jam up, or . . . if . . . [Claimant] accidentally would have hit [the] gas pedal . . . , he could have caused not only tragedy to possibly machinery, but if someone would have been near or around, he could have hurt and/or killed somebody. We have a policy here at [Employer] that states that you are not allowed to sleep on the job. If [Claimant] would have walked to the breakroom, it still would have been unacceptable to sleep in the breakroom, but in th[is] case where he was sleeping, that could have been a very horrible situation, severely unsafe.

*Id.* at 10; *see also* R. Item No. 5 (wherein Employer stated that Claimant's sleeping on a forklift on the production floor was a "[m]ajor safety infraction").

Ms. Gehringer acknowledged that Claimant had previously sent a text message to his supervisor, though she did not specify what the message stated. N.T., 7/8/21, at 10-11.[3] However, Ms. Gehringer testified that she often "had to counsel [Claimant]

---

[3] Claimant submitted into the record two email messages that he apparently sent to Ms. Gehringer on June 18, 2021 and June 28, 2021. *See* R. Item No. 9; N.T., 7/8/21, at 4-5. The first email appears to be a screenshot of a text message Claimant sent to Ms. Gehringer on January 4, **(Footnote continued on next page…)**

because when he comes into work, . . . he will punch in . . . hours before his scheduled start time, he'll stay in the breakroom, he'll take extended breaks" and that "he's been counseled numerous times about doing that" during his shifts. *Id.* at 11.

Claimant testified that he slept on the job on the day in question "because he was tired." *Id.* at 8. Claimant explained:

> I think it was around December or January, . . . I was working by myself there. I was working 12 hours. . . . [E]verybody was working 12 hours because we have two machine[s] . . . . And I didn't work like two shifts, three in the morning till three in the afternoon, three in the afternoon till three in the morning. So . . . I told [my supervisor] he cannot make . . . 12 hours [sic] for everybody. He said we should stay four hours to help each other. So[] we were working 12 hours. . . . I was working by myself for so long, which I always adapted to . . . and I was working by myself and I was tired.

*Id.* Claimant testified that he worked to the best of his ability and never knowingly violated a work rule. *Id.* Claimant then testified: "I sent them [a message] that I was working by myself and . . . the [p]lant [m]anager told me that he was going to send somebody . . . [but] they did not send nobody [sic], that's why I explained that they should find me somebody that would be helping me work." *Id.* at 9.

Claimant disagreed with Ms. Gehringer's testimony regarding the circumstances of the sleeping incident. Claimant testified that he "did not sleep in the middle of the

---

2021; the second email contains the text of the January 4, 2021 text message. The January 4, 2021 text message stated:

> Good evening Tyler [(Claimant's supervisor)], This is [Claimant]. Please, I can't be working by myself and running the two lines alone. It's stressing me up. Lidio came by [at] 7 am and left by 3 pm. We should follow the schedule because I can manage for 2 hours when Lidio leaves by 9 pm until Steve comes. It can't continue like this. Don't count the helper because he sweeps and I don't need a sweeper now.

R. Item No. 9.

4

production" floor and he "was not really fully sleeping." *Id.* at 11, 13. Rather, he testified that he was resting his head on a packing crate and was "waiting for . . . the maintenance man to come and load" the bailer machine. *Id.* at 11, 13. Claimant testified that while he was seated inside the forklift, "[t]he forklift [engine] was off," "the hand brake was on," and "there was no way the forklift could have moved." *Id.* at 12-13. He further testified: "[E]ven if I wanted to sleep, I would not . . . sleep in an open area, I would [go] to my car and sleep." *Id.* at 13.

Following the hearing, the Referee reversed the Service Center's decision. The Referee found, based on Employer's credible testimony, that Claimant was discharged for sleeping on the job, which was a disregard of the standards of behavior that Employer had a right to expect of its employees and a violation of Employer's policy. The Referee explained his reasoning as follows:

> Claimant admitted [that] he slept on the job and cited his belief [that his] workload caused by a co-worker leaving as the reason for his conduct.
>
> *. . . Employer credibly testified [that] Claimant slept on the job on March [20], 2021. . . . Employer further testified that Claimant was captured [in a] photo sleeping. . . . Claimant did not contest sleeping but contested the location and nature of the sleeping episode.*
>
> Here, . . . Claimant admitted [that] he slept at work and was discharged for sleeping at work in his documentary submissions. . . . Employer credibly testified [that] Claimant slept at work[,] which was below . . . Employer's standards and violated a [work] rule.
>
> *Based on the testimony of . . . Claimant, . . . Employer, and the competent evidence contained in the record, the Referee finds that . . . Claimant's conduct fell below the standards of behavior that [E]mployer reasonably expected from Claimant[] and violated [Employer's] sleep rule. . . .*

Ref.'s Order, 7/12/21, at 2-3 (emphasis added). The Referee also found that Claimant did not "establish[] good cause or justification" for sleeping on the job. *Id.* at 3.

5

Therefore, the Referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Claimant appealed to the Board, which adopted the Referee's findings of fact and conclusions of law in their entirety and affirmed the Referee's decision. Bd.'s Order, 10/4/21, at 1.[4] Claimant now petitions this Court for review.[5]

## Analysis

Our courts have defined "willful misconduct" as: (a) a wanton or willful disregard of the employer's interests; (b) a deliberate violation of the employer's rules; (c) a disregard for the standards of behavior that the employer rightfully can expect of its employees; or (d) negligence indicating an intentional disregard of the employer's interests or of the employee's duties or obligations. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003). The employer bears the burden of proving that the claimant was discharged for willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).

It is well settled that sleeping on the job is a disregard of the standards of behavior that an employer has the right to expect of its employees. *See Kelley v. Unemployment Comp. Bd. of Rev.*, 429 A.2d 1227, 1228-29 (Pa. Cmwlth. 1981); *see also Biggs v. Unemployment Comp. Bd. of Rev.*, 443 A.2d 1204, 1205 (Pa. Cmwlth. 1982) (stating that sleeping on the job is "*prima facie* an act of willful misconduct"). Once the employer proves that the claimant intentionally slept on the job, the burden shifts to the claimant "to prove that, under the facts of the particular case, sleeping on

---

[4] The Board did not issue its own findings or conclusions or further explain its ruling in its Order.

[5] Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

6

the job does not constitute willful misconduct." *Ragland v. Unemployment Comp. Bd. of Rev.*, 428 A.2d 1019, 1020 (Pa. Cmwlth. 1981). "Only if there is justifiable or reasonable cause under the circumstances [can] the willful misconduct taint be purged." *Biggs*, 443 A.2d at 1205.

On appeal, Claimant does not challenge the Board's finding that Employer discharged him for intentionally sleeping on the job, which was a disregard of Employer's interests and violated Employer's work rule. Claimant only challenges the Board's finding that he lacked good cause for sleeping on the job. *See Unemployment Comp. Bd. of Rev. v. Simone*, 355 A.2d 614, 616 (Pa. Cmwlth. 1976) ("When an employer proves that an employe[e] slept on the job, or an employe[e] admits that he slept on the job, [a] *prima facie* case of willful misconduct has been set forth."). Specifically, Claimant asserts that he slept on the job because he had been working 12-hour shifts and covering two lines of production for three months alone, when the job should have been covered by two people. Pet. for Rev. at 1. Claimant also asserts that two months before the sleeping incident, he complained about his workload via text messages to his supervisor and Ms. Gehringer and requested help, but they ignored his requests. *Id.*; *see* Claimant's Br. at 3-4.

In support of his position, Claimant cites, without any explanation or discussion, *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965 (Pa. Cmwlth. 2010). In that case, the claimant was discharged for sleeping on the job, which was a violation of her employer's work rule. *Id.* at 967. The claimant did not deny sleeping, but she testified that she was diagnosed with sleep apnea, which caused her to fall asleep unintentionally. *Id.* She also testified that she had long periods at work with nothing to do and had asked her employer to give her additional work so she would not fall asleep, but the employer did so only two times. *Id.* On appeal, this

Court concluded that the employer failed to meet its initial burden of proving that the claimant deliberately violated the employer's work rule. *Id.* at 969. We explained:

> The record reveals that [the c]laimant's position involved sitting in the money room for hours with nothing to do and that she would get drowsy. [The c]laimant recognized the problem and attempted to address it by informing [her e]mployer that she was tiring and asking for additional work to keep her busy and alert. However, with the exception of two small assignments, [the e]mployer did not provide her with additional work or take any other action to remedy the situation. Although [the c]laimant fell asleep during her shift, [she] attempted to resolve her drowsiness problem in a responsible manner that protected the interests of [the e]mployer. Considering [the c]laimant's actions in light of all of the circumstances of this case, we conclude that [the e]mployer failed to prove that [the c]laimant deliberately or intentionally violated its work rules by sleeping during her shift.

*Id.* (internal citations omitted).

We conclude that Claimant's reliance on *Philadelphia Parking* is misplaced. The employer in that case attempted to show that the claimant deliberately violated a work rule by sleeping while on duty, while the claimant maintained that she fell asleep unintentionally. As a result, the employer did not rely on cases in which sleeping on the job, in and of itself, constituted *prima facie* evidence of willful misconduct, as is the case here. Because we concluded that the claimant's conduct was not deliberate and, thus, not willful misconduct, we did not engage in a good cause analysis to evaluate whether her actions were reasonable or justifiable under the circumstances. Consequently, *Philadelphia Parking* is inapposite here, because the only issue before us is whether Claimant had good cause for sleeping during his shift. *Accord Staudt v.*

8

*Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 768 C.D. 2014, filed Jan. 30, 2015) (distinguishing *Philadelphia Parking* on a similar basis).[6]

In his appellate brief, Claimant asserts that he "was faced with health hazards caused at the work place, [he] did not have family time, fati[g]ue set in, [he had] no time to recuperate," he suffered from "tiredness," and he "was faced with environmental hazards as well as mental health [issues] like anxiety and [post-traumatic stress disorder]." Claimant's Br. at 6. At the hearing, however, Claimant presented no evidence to support these assertions; rather, to establish good cause, Claimant only presented evidence that he was working 12-hour shifts and had previously asked his supervisor for assistance. *See* N.T., 7/8/21, at 9; R. Item No. 9. Despite his claim that he was overextended by having to work 12-hour shifts, however, Claimant acknowledged at the hearing that "everybody was working 12 hours" at that time. N.T., 7/8/21, at 8. Claimant also attempted to minimize his conduct, asserting that: (1) he slept while he was waiting for a maintenance worker to get the bailer machine working again; (2) he was not asleep in the middle of the production floor; (3) he "was not really fully sleeping" inside the forklift; and (4) he could not have harmed anyone because "there was no way the forklift could have moved." *Id.* at 11-13. However, the Board credited Employer's testimony to the contrary, and we will not disturb those findings on appeal. *See Oliver v. Unemployment Comp. Bd. of Rev.*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010) (stating that the Board's findings are conclusive on appeal when the record, as a whole, contains substantial evidence to support those findings).

---

[6] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

In essence, Claimant contends that he had good cause for sleeping at work because he was tired from working 12-hour shifts, he previously requested help, and he was waiting for a maintenance worker to arrive. However, the Board concluded, based on the credible evidence of record, that none of Claimant's reasons constituted good cause for sleeping inside a forklift in the middle of the production floor during his shift. *See* Bd.'s Order, 10/4/21, at 1; Ref.'s Order, 7/12/21, at 3; *see also Simone*, 355 A.2d at 616 ("As a matter of public policy, an employer has a right to expect that his employe[e]s will not go to sleep when they have a short period of forced idleness. Absent proof that the employer either permits or tolerates such sleeping, . . . *sleeping during a period of forced idleness constitutes willful misconduct*.") (emphasis added). Furthermore, Ms. Gehringer credibly testified that Claimant's act of sleeping inside a forklift on the production floor created a potentially hazardous situation at the work site. N.T., 7/8/21, at 10. There is also no evidence that Claimant ever informed Employer that he was tired or having difficulty staying awake that night.[7] We agree with the Board that, under these circumstances, Claimant did not act reasonably or justifiably in sleeping during his shift.

## Conclusion

Accordingly, because we conclude that Claimant failed to establish good cause for sleeping on the job, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

_____

[7] In fact, in the January 4, 2021 text message Claimant sent to his supervisor, Claimant did not mention that he was experiencing fatigue or difficulty staying awake during work hours; he only stated the workload was causing him stress. *See* R. Item No. 9.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Offiong A. Ubom,                   :
               Petitioner        :
                                      :
        v.                        :   No. 1236 C.D. 2021
                                      :
Unemployment Compensation    :
Board of Review,                 :
               Respondent      :

# **O R D E R**

AND NOW, this 10th day of June, 2022, the Order of the Unemployment Compensation Board of Review, dated October 4, 2021, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge